IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Cooke Associates of Fork, Inc., d/b/a Sunny Acres; Cooke Associates of Bishopville, LLC; McCoy Memorial Nursing Center; Aiken Nursing Home, Inc., d/b/a Azeala Woods; Honorage Nursing Home, Inc.; Clarke Nursing Home; Cooke Associates of Florence, Inc.; Cooke Associates of Fountain Inn, LLC, d/b/a Fountain Inn Convalescent Home; Kingstree Nursing Facility, Inc., d/b/a Kingstree Nursing Facility; Cooke Associates of Lake View, LLC; Carolina MedCare, Inc.; and Ryan Finklea, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:06-cv-03635-RBH |
| Plaintiffs, | ) ) | |
| v. | ) ) | **TEMPORARY RESTRAINING ORDER** |
| Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, Leslie V. Norwalk, Esq., Acting Administrator of the Centers for Medicare & Medicaid Services, and Robert M. Kerr, Director of the South Carolina Department of Health and Human Services, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter came before the Court on December 28, 2006, pursuant to Plaintiffs'

Motion for a Temporary Restraining Order. Upon considering the contents of the Verified

Complaint, the Motion for Temporary Restraining Order, and the Memorandum in Support

of Motion for Temporary Restraining Order, with exhibits, the Court finds that Plaintiffs

will suffer irreparable injury if Defendants are not immediately 1) restrained from requiring

Plaintiffs to issue termination notifications to Medicare residents, notifying them that they

must relocate to another facility by January 3, 2007 or waive their right to Medicare reimbursement; 2) restrained from terminating Plaintiff Nursing Homes' Medicare provider agreements on December 31, 2006; and 3) restrained from revoking Plaintiff Carolina MedCare's Medicare billing privileges on January 10, 2007.  Now, therefore, based only on the Verified Complaint and attached exhibits, the Court makes the following findings of fact and conclusions of law:

Findings of Fact

1.     Plaintiff Carolina MedCare operates an ambulance service in South Carolina for nursing homes, and participates in the Medicare program.  The remaining Plaintiffs herein have an ownership or leasehold interest in, or a management agreement for the operation of, certain nursing homes within the state of South Carolina, including Sunny Acres, McCoy Memorial Nursing Center, Inc., Azalea Woods, Clarke Nursing Home, Fountain Inn Convalescent Home, and Kingstree Nursing Facility (herein collectively referred to as the "Nursing Homes").  The Nursing Homes all participate in the Medicare program, and provide care under the Medicare program for sixty-five (65) residents who are beneficiaries of that program.

2.     By letters dated December 1, 2006, CMS notified the Nursing Homes that it was terminating the Medicare provider agreements effective December 16, 2006, and revoking Medicare billing privileges for the Nursing Homes effective December 31, 2006.  By letter dated December 15, 2006, the termination of the Medicare provider agreements was extended to December 31, 2006.  By letter dated December 11, 2006, CMS notified Carolina MedCare that it was revoking its Medicare billing privileges effective January 10,

2007.   The December 1, 11, and 15, 2006 letters will be referred to herein as the "termination letters."

3.      CMS is now requiring that certain affected Medicare residents be relocated to other facilities by January 3, 2006, unless those residents waive their Medicare benefits.   CMS further advised Plaintiffs that seven of the Medicare residents must be notified by December 27, 2006 that this relocation is required.

4.      The indicated basis for this action is that an individual and related business entities who had ownership, leasehold or management interests in the Plaintiff Nursing Homes were debarred by the U.S. Department of Housing and Urban Development ("HUD") in 2004. CMS's determinations were not based on any survey findings and the termination letters do not reference any deficiencies, or noncompliance related to the requirements for participation in the Medicare program set forth in 42 C.F.R. § 483.1, et seq.   Furthermore, the letters do not allege that the health or safety of residents has been in any manner adversely affected.

5.      Plaintiffs' allege that the debarred individual and entities have now divested themselves of any ownership, leasehold, or management interest in the Nursing Homes. Upon this divestiture, each of the Nursing Homes provided documentation to CMS. As of December 28, 2006, CMS has refused to rescind the terminations and revocations, is continuing to ask for information about the divesture, has demanded performance of additional matters, and has ordered the Nursing Homes to notify seven of their residents on December 27, 2006, of their need to be relocated by January 3, 2007.   CMS may at any point require the Plaintiffs to notify the remaining fifty-eight Medicare residents who are

also Medicaid residents of their need to be relocated.

6.      As soon as residents are notified, the relocations will begin.  This will result in the loss of revenues from the Medicare program.

7.      For a period not to exceed 30 days from the date of termination, the Medicare program will continue to reimburse Plaintiffs for services provided to those beneficiaries who were residents in the facility on the date of termination, while arrangements are being made to transfer them to other facilities.

8.      Plaintiffs have requested an expedited administrative hearing under 42 C.F.R. § 498 in order to contest the grounds of termination, but said hearing cannot be held before notice was required to be given to the Medicare residents.  It is furthermore unlikely that a hearing will be held before the termination and revocations are completed.  The decision of the administrative law judge is likely to be issued even later.

9.      With regard to the likelihood of irreparable harm to the Plaintiffs, relocation of Medicare residents, and potentially Medicaid residents, may require the closure of the Plaintiff Nursing Homes and the suspension of Carolina MedCare's business operations.

10.      With regard to the likelihood of irreparable harm to the Defendants, Defendants will suffer no harm if a temporary restraining order is issued because the order will result only in the agencies' continuing to pay for covered services furnished to eligible beneficiaries, which are payments the agencies would also make if the beneficiaries were transferred to other facilities with Medicare provider agreements.

11.      If the residents stay within the Plaintiffs' facilities they are unlikely to suffer harm because the latest survey found Plaintiffs' facilities to be in substantial compliance with

health and safety regulations.  In addition, the residents will not have to be moved (some potentially to surrounding states) during the holidays.  Moreover, relocation of residents to other facilities is an event that causes stress to residents of nursing homes and caries a risk of harm to the residents' health and well-being.

12.    With regard to the likelihood of Plaintiffs' success on the merits, the Court finds that the factors presented in paragraphs 9 and 10 above weigh in favor of the Plaintiffs, and further that based on the Verified Complaint grave and serious questions are presented as to the merits.

13.    There is no public interest that would be harmed by delaying the revocation of the Plaintiffs' Medicare billing privileges or the termination of their provider agreements until after the Plaintiffs have been able to challenge the grounds of the revocations and terminations and a decision is given after an administrative hearing.

14.    Plaintiffs' counsel has certified to the Court that they have notified the Defendants of Plaintiffs' Motion for a Temporary Restraining Order by contact to Howard Lewis, General Counsel for the United States Department of Health and Human Services on December 27, 2006.  The Court finds that there is not sufficient time to schedule a formal hearing for an injunction, nor is there time to provide Defendants with the required notice for such a motion.  It clearly appears from the specific facts shown by the Verified Complaint that immediate and irreparable harm will result to the Plaintiffs before the Defendants can be heard in opposition.  Additionally, this application was made between the Christmas and New Year's holidays and the Court is promptly scheduling a hearing on the matter the Friday following New Year's Day.

Conclusions of Law

1.     The Court has jurisdiction under 28 U.S.C. §1331 of Plaintiffs' claim that the procedures utilized by Defendants to effectuate a termination of the Plaintiffs' Medicare billing privileges and provider agreements are constitutionally inadequate because they force such providers to incur a devastating loss before the nursing home can access the appeals process, and further by requiring notification of termination to issue to Medicare residents while at the same time still requesting additional information about the divestiture.  These procedural due process issues are matters that are wholly collateral to the determination of benefits, and the Plaintiffs' interest in having a determination on these matters prior to exhausting their administrative remedies is so great that deference to a decision by the Secretary whether to waive the remaining administrative procedures to accomplish the exhaustion requirements is inappropriate.

2.     The Court finds that immediate and irreparable injury, loss, or damage will result to the Plaintiffs before the Defendants can be heard in opposition to their request for a Temporary Restraining Order.

3.     Under the four part hardship balancing test for evaluating a request for injunctive relief, required by Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977); and, Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113 (4th Cir. 1993), issuance of a Temporary Restraining Order here is appropriate:

      a.     There is a likelihood of irreparable harm to Plaintiffs though the loss of their revenues, the relocation of their Medicare residents, and the likelihood of closure of their Nursing Home facilities and of Carolina MedCare if a

restraining order is not issued;

b.    No harm will be suffered by Defendants in the Court's issuing a restraining order because the Defendants will likely be paying the same fees for the affected Medicare residents, regardless of in what facility the residents are located;

c.    There is not a likelihood of harm to Plaintiffs' residents if a restraining order is issued because Plaintiffs were found in substantial compliance with health and safety requirements on its last survey;

d.    A balance of the irreparable harm to the parties weighs heavily in favor of the Plaintiffs. Further, based on the Verified Complaint, the Plaintiffs have presented grave and serious questions as to the merits. Thus, the Plaintiffs need not demonstrate a likelihood of success on the merits. See Blackwelder, 550 F.2d at 196.

e.    The consideration of public interest factors weighs heavily in favor of granting the Temporary Restraining Order to the extent that the elderly nursing home patients will be forced to relocate if the Temporary Restraining Order is not granted causing a substantial burden to the elderly patients and their families. No public interest will be served by displacing and relocating these elderly patients. Further, no public interest will be served by denying Plaintiffs an administrative hearing prior to the revocation of their Medicare billing privileges and termination of their Medicare and Medicaid Provider Agreements.

Now Therefore,

**It is Ordered:**

1.      Defendants, their agents and all those acting in privity with them, are hereby enjoined from:

> a. Requiring Plaintiffs to send out Notices of Termination to affected Medicare residents notifying them of the requirement that they be relocated by December 31, 2006;
>
> b. Revoking Plaintiffs' Medicare billing privileges or terminating their Medicare and Medicaid provider agreements until the Plaintiffs have been afforded a hearing and the revocation and termination actions are upheld by the hearing officer, while this Temporary Retraining Order is in effect;
>
> c. Involuntarily relocating the Plaintiffs' residents prior to the hearing on the preliminary injunctive relief sought in the Complaint; and,
>
> d. Making efforts to relocate Plaintiffs' residents prior to the hearing on the preliminary injunctive relief sought by the complaint, except Defendants may
>
>> i.      identify reasonably appropriate alternative placement in the event the decertification and termination actions are upheld by the hearing officer;
>>
>> ii.      develop a plan to minimize any transfer trauma or stress to the residents in the event the decertification and termination actions are upheld by the hearing officer; and,

      iii.   counsel the residents or their guardians or representative as to available community resources.

2. Plaintiffs may rescind the previous Notices of Termination sent out on December 27, 2006, regarding the seven (7) patients, and the Defendants are enjoined with regard to these patients in the same manner as they are enjoined in paragraph 1.

3. Plaintiffs must post bond in the amount of One-hundred thousand ($100,000.00) dollars by 12:00 P.M. Friday, December 29, 2006.

4. This Restraining Order shall remain in effect for ten days from the date of this Order unless extended by Order of Court, or consent of the parties.

5. The Court schedules a hearing on the preliminary injunctive relief sought in the Verified Complaint for Friday, January 5, 2007, at 3:30 p.m.  With the Defendants' consent, the Court may reschedule the hearing at a later time should the Defendants need more time to prepare.

6. A copy of this Order shall be served on all Defendants and their counsel immediately by the Plaintiffs.

IT IS SO ORDERED.


5:15 p.m.
December 28, 2006            s/R. Bryan Harwell
Florence, South Carolina         R. Bryan Harwell
                     United State District Judge